## In the Matter of the Estate of MARY C. DAVIS, Deceased.

Surrogate's Court, Delaware County, February 2, 1927.

**Surrogate's Court — discovery proceedings — each respondent claimed that property held by her was gift — sole evidence as to gift was testimony of each in favor of other — evidence does not establish gift — administrator did not examine respondents as to transactions with decedent — respondents barred from testifying as to such transactions by Civ. Prac. Act, § 347.**

In a proceeding by the administrator of a decedent's estate, pursuant to sections 205 and 206 of the Surrogate's Court Act, to discover property belonging to the decedent, in which it appears that each respondent claimed that the property held by her was a gift from decedent, the gifts are not established where the sole evidence is the testimony of each respondent in favor of the other.

Where the respondents were not interrogated by the administrator as to personal transactions with the decedent they are barred by section 347 of the Civil Practice Act from testifying as to such transactions.

PROCEEDING instituted by the administrator of the estate of Mary C. Davis, under the provisions of sections 205 and 206 of the Surrogate's Court Act, to discover property of decedent.

On return of an order to show-cause the respondent Euphemia Bellows filed an answer alleging that she had title and right to possession of a certain bank book issued in the name of Mary C. Davis by the Kingston Savings Bank, by virtue of a gift of the same to her by the decedent on or about the 9th day of April, 1926. The amount of the account was the sum of $1,480.68.

An answer was filed by the respondent Chester Mead denying that he had possession of any property of the decedent. It developed upon the examination that May Mead, the wife of

Chester Mead, was in possession of a note of $600 made by Chester Mead and payable to the decedent.

It was stipulated that the respondent May Mead appeared and that her answer alleging title to the note would be filed and the issues tried in this proceeding the same as though a petition had been presented and an order to show cause obtained. The petition and order against Chester Mead were withdrawn.

The issue of title raised by the answers was tried before the surrogate without a jury. Upon the trial certain testimony was permitted to be given tentatively over the objection of the petitioning administrator and subject to a motion to strike out. Such motion was made at the close of the case. The motion to strike out such testimony has been granted. The surrogate has indicated upon the record the testimony stricken out.

*A. L. O'Connor*, for John H. Chrispell, administrator.

*George A. Speenburgh*, for the respondents Euphemia Bellows and May Mead.

MCNAUGHT, S. Proceedings to discover property of a decedent in possession of another have long been permitted. Formerly the question of title, if raised by the answer, could not be tried by the surrogate. Under the present provisions, where the answer alleges title or right of possession to property involved in the inquiry the issue is to be heard and determined by the surrogate. (Surrogate's Court Act, § 206. See *Matter of Heinze*, 224 N. Y. 1; *Matter of Hyams*, 237 id. 211, 217; *Matter of Fonda*, 201 App. Div. 780.)

A jury trial was not demanded (Surrogate's Court Act, § 68) and the issues were submitted to the surrogate for determination.

The decedent died a resident of the town of Roxbury, April 13, 1926. She left no descendants. Her husband predeceased her. The next of kin consist of two brothers, two nieces and a nephew.

The respondent Euphemia Bellows was a friend and acquaintance of the decedent for many years. The respondent May Mead is a daughter of Euphemia Bellows. The respondents contend that on April 9, 1926, they visited the decedent and upon such occasion she made a gift of the savings bank book to Mrs. Bellows and of the note in question to Mrs. Mead.

The answers admitting possession of the property in question and alleging title, the burden of proving the gift rests upon respondents. (*Matter of Housman*, 224 N. Y. 525; *Matter of Canfield*, 176 App. Div. 554; *Matter of Crook*, 190 N. Y. Supp. 285; *Matter of Cofer*, 121 Misc. 292.)

The burden thus imposed upon respondents requires proof of the

gift by a fair preponderance of the evidence. (*Ward* v. *N. Y. Life Ins. Co.*, 225 N. Y. 314; *Matter of Sherman*, 227 id. 350; *McKeon* v. *Van Slyck*, 223 id. 392, 397.)

Under the circumstances existing in this proceeding the proof of a gift must be clear, convincing and satisfactory. (*Matter of Van Alstyne*, 207 N. Y. 298, 306; *Ward* v. *N. Y. Life Ins. Co.*, *supra; Matter of Sherman*, *supra*.)

Although the proof must be satisfactory, no greater degree of proof is required than that which must be presented to substantiate any claim. (*McKeon* v. *Van Slyck*, *supra; Caldwell* v. *Lucas*, 233 N. Y. 248.)

In a discovery proceeding, if the petitioner call the respondent as a witness and examine as to transactions with the decedent, the respondent is rendered a competent witness to testify to such personal transactions. (*Matter of Benioff*, 73 Misc. 493, citing *Carpenter* v. *Soule*, 88 N. Y. 251, 257; *Holcomb* v. *Harris*, 166 id. 257.) Such action on the part of the personal representative opens the door so the witness may testify as to matters in reference to which he would otherwise be disqualified under section 347 of the Civil Practice Act. (*People* v. *Bloom*, 193 N. Y. 1.)

In the case at bar the respondents were not called and examined by the petitioner. The answers admitted possession of the property in question and claimed title by virtue of a gift. The line of cases relied upon by respondents (illustrated by the recent decision in *Matter of Sanita*, 219 App. Div. 178) is not applicable, as in such cases the claimant was called and examined by the legal representative.

Prior to 1914 it was provided (Code Civ. Proc. § 2709) that when a witness was examined in discovery proceedings in Surrogate's Court, objections under section 829 were waived. When this section, however, was re-enacted as section 2676 of the Code of Civil Procedure (now section 206 of the Surrogate's Court Act), the provision was eliminated. The rule governing such testimony is, therefore, now to be found in section 347 of the Civil Practice Act and not elsewhere. (*deLaurent* v. *Townsend*, 243 N. Y. 130.)

Where, therefore, the petitioner has not interrogated the respondent as to personal transactions with decedent, or testified in his own behalf, the respondent is barred from testifying to such transactions. (Civ. Prac. Act, § 347; *Matter of Benioff*, *supra; Matter of Housman*, 182 App. Div. 37; *Matter of Glasgow*, 209 id. 884; *Griswold* v. *Hart*, 205 N. Y. 384.)

A person having a similar claim arising out of a personal transaction with the decedent is not disqualified as a witness. (*Rix* v. *Hunt*, 16 App. Div. 540; *Meislahn* v. *Meislahn*, 56 id. 566; *Matter of Wood*, 185 id. 936.) In such cases a wife is a competent

Misc. 622]    Surrogate's Court, Delaware County, February, 1927.

witness for a husband, but she is an interested witness. (*Matter of Wood, supra; Matter of Van Vranken,* 120 Misc. 280.)

Gifts either *inter vivos* or *causa mortis* must be established by clear and most convincing evidence. Testimony of relatives, servants or interested parties is insufficient. (*Killian* v. *Heinzerling,* 47 Misc. 511; revd. on other grounds, 114 App. Div. 410; *Matter of Schroeder, No. 1,* 113 id. 204; affd., 186 N. Y. 537; *Matter of McMillan,* 167 App. Div. 817; affd., 218 N. Y. 64; *Ennis* v. *Chichester,* 187 App. Div. 53, 71, 72; affd., 227 N. Y. 663; *Matter of Buoninfante,* 125 Misc. 907; *Matter of Van Vranken, supra.*)

The principles applicable to alleged agreements with deceased persons and contracts as to distribution of property apply with equal force and effect in discovery proceedings where title by gift is claimed by the respondent. (See *Hamlin* v. *Stevens,* 177 N. Y. 39; *Rosseau* v. *Rouss,* 180 id. 116.)

In issues of this character the record must be scrutinized with extreme care. Next of kin may easily be divested of property by the testimony of interested or biased witnesses. Frequently, as in this case, the account of the transaction is not improbable or unreasonable. It may appeal to the court as perfectly truthful. The difficulty arises from the fact that it is not corroborated. If corroboration is not present the gift must fail. The court cannot assume the burden of depriving the estate of a decedent of its assets unless testimony is offered other than from someone directly concerned and vitally interested in the result.

Considerable testimony has been offered by both parties relative to the mental and physical condition of the decedent on April 9, 1926, when it is alleged the gifts in question were made. A review of such testimony is unnecessary in the view the court takes of the issue presented. It is manifest upon the record that either Dr. Keator is mistaken as to the dates of his visits, or the witnesses Yanson and Draffen are mistaken as to the date of the transactions to which they testified. Obviously the diverse conditions testified to by the witnesses could not possibly have existed on the same day within a period of about an hour.

As the record stands the gift of the savings bank book to the respondent Euphemia Bellows rests almost entirely upon the uncorroborated testimony of her daughter, May Mead. While Mrs. Miller testified to signing as a witness to an order or check upon the Kingston Savings Bank for the account represented by the savings bank book, her testimony is without value. She could not recall that the decedent or any other person requested her to sign as a witness, nor explain in a satisfactory manner why her signature

40

was affixed to the order. The testimony of Mrs. Shaver as to a statement by decedent that she desired a package of papers, in her chiffonier, given to Mrs. Bellows is likewise insufficient corroboration of a gift of the bank book on April ninth.

The claim of the respondent May Mead to the $600 note in like manner rests almost wholly upon the testimony of the respondent Euphemia Bellows, her mother.

Under the rules enunciated by the authorities cited, the testimony offered is insufficient to establish the claims of the respondents by a fair preponderance of the evidence. The alleged gifts cannot be sustained. The savings bank book and the $600 note of Chester Mead should be delivered to the administrator.

The question of a gift of the gold watch and chain and the five-dollar gold piece have not been discussed, as it was practically conceded on the trial that the evidence was insufficient to sustain the claim of a gift of such articles.

A decree in conformity with the views above expressed may be made and entered.