■ In the Matter of the Estate of THOMAS GIACALONE, Deceased. ANTONINA GIACALONE, Appellant; NINA CASCIO, Also Known as NINA CASCIA, Respondent.—In a discovery proceeding to recover the proceeds of a bank account held jointly by the decedent Thomas Giacalone and the respondent Nina Cascio, the petitioner Antonina Giacalone, who is the executrix of the decedent's estate, appeals from a decree of the Surrogate's Court, Suffolk County (Signorelli, S.), entered March 9, 1987, which denied her application.

Ordered that the decree is affirmed, with costs payable by the estate.

The decedent Thomas Giacalone died on February 16, 1985. In 1981 the decedent began living in a nursing home. On or about December 8, 1982, the decedent opened a joint bank account with his niece, the respondent Nina Cascio, who regularly visited him until he died. Although ill, the proof, including testimony of a social worker, revealed that the decedent was mentally alert until shortly before his death. A few days prior to the decedent's death, the respondent withdrew all of the moneys from the joint bank account. After the decedent's death, the petitioner, another niece of the decedent and the executrix under his last will and testament, commenced this "turnover" proceeding to recover the proceeds of the subject joint bank account on behalf of the estate. After a hearing, the Surrogate determined that (1) the petitioner failed to establish that the joint bank account was created by the decedent as a convenience or that the bank account was procured by the fraud or undue influence of the respondent, and (2) the decedent intended to and did effectuate a gift to the respondent of his share of the proceeds of the joint bank account. We now affirm.

Even when one of the joint tenants is the sole depositor in a joint account as in the instant case, each of the joint tenants has a property right to an undivided one half of the moneys

deposited *(see, Matter of Kleinberg v Heller,* 38 NY2d 836). As to any excess moneys withdrawn, the withdrawing joint tenant has the burden of proving by clear and convincing evidence that the withdrawals were with the decedent's consent *(Matter of Byrnes,* 85 AD2d 601, 602), or that the decedent made a valid inter vivos gift to her *(see, Gruen v Gruen,* 68 NY2d 48, 52; *Matter of Abramowitz,* 38 AD2d 387, 389-390, *affd* 32 NY2d 654). The elements of an inter vivos gift of an undivided one half of a joint bank account are (1) the intent on the part of the donor (the decedent) to make a present transfer of his share of the joint account, (2) delivery of the passbook, and (3) acceptance by the donee (the respondent) *(see, Gruen v Gruen, supra,* at 53).

A review of this record reveals that there was testimony by the respondent which was admitted without objection *(see, Horton v Smith,* 51 NY2d 798, 799 ["(w)hen a timely objection is not made, the testimony offered is presumed to have been unobjectionable and any alleged error considered waived"]; *Sanchez v Kato, Inc.* 115 AD2d 646; *Rubio v Reilly,* 44 AD2d 592; CPLR 4017) that the decedent had previously given her the moneys in the joint account and said, "it was mine, it was my CD". Unlike the factual situation in *Matter of Wicks* (42 AD2d 1021), where the decedent " 'was going to give' " or " 'spoke of giving' ", or in *Matter of Gordon* (17 AD2d 165), where the decedent was under sedation, confused and incoherent at the time of the alleged gift, the decedent in this case expressly and unequivocally gave the entire bank book to the respondent at a time when he was mentally alert.

Further, the proof established that at the time of the creation of the joint bank account in December 1982 the address given to the bank was the decedent's nursing home address, and the passbook was ultimately acquired by the respondent. The law as to delivery of an inter vivos gift was stated by Judge Simons in *Gruen v Gruen (supra,* at 56, quoting from *Matter of Szabo,* 10 NY2d 94, 98) as follows: "In order to have a valid inter vivos gift, there must be a delivery of the gift, either by a physical delivery of the subject of the gift or a constructive or symbolic delivery such as by an instrument of gift, sufficient to divest the donor of dominion and control over the property * * * As the statement of the rule suggests, the requirement of delivery is not rigid or inflexible, but is to be applied in light of its purpose to avoid mistakes by donors and fraudulent claims by donees * * * Accordingly, what is sufficient to constitute delivery 'must be tailored to suit the circumstances of the case' ".

In this case, despite the absence of any direct proof of a delivery of the passbook, there is sufficient circumstantial evidence to clearly establish that the decedent gave the bankbook to the respondent and thereby constructively delivered a gift of his share of the funds in the joint bank account.

We have reviewed the petitioner's remaining contentions and find them without merit. Mangano, J. P., Bracken, Spatt and Harwood, JJ., concur.